Joseph P. MALONEY, John C. Wright, Harry A. Robbins, d/b/a Maloney, Wright & Robbins, Plaintiffs/Appellants,

v.

Lee THURMAN, Jr., Defendant/Respondent.

No. ED 87352.

Missouri Court of Appeals, Eastern District, Southern Division.

Nov. 21, 2006.

Robert Scott Reid, Fredericktown, MO, for appellant.

David L. Mayhugh, Park Hills, MO, for respondent.

OPINION

MARY K. HOFF, Judge.

Joseph P. Maloney, John C. Wright, and Harry A. Robbins (Robbins) (collectively Appellants), d/b/a Maloney, Wright & Robbins (MWR), appeal from a summary judgment entered by the trial court in favor of Lee Thurman, Jr., (Thurman) on Appellants' petition to enforce the terms of an employment agreement between the parties. Appellants also appeal from the trial court's judgment entered regarding certain discovery motions. We reverse and remand for further proceedings.

*Factual and Procedural Background*

Appellants are partners in the accounting firm of MWR, located in Farmington, Missouri. MWR and Thurman are parties to two separate contracts. On November 15, 1993, MWR and Thurman entered an Agreement for Sale of Business under which Thurman sold his accounting practice in Park Hills, Missouri to MWR, and MWR employed Thurman part time for twelve months. The Agreement for Sale of Business also provided that Thurman would sell all books, client records, work papers, engagement documents, and accounts of Thurman's accounting practice and turn over all of Thurman's client files to MWR.

On September 1, 1996, MWR and Thurman entered an Employment Agreement under which MWR employed Thurman full time and either party could terminate the agreement upon sixty days written notice. The Employment Agreement included a covenant not to compete provision, which provided that, upon termination of the agreement, Thurman:

> [would] not directly or indirectly solicit the accounting, bookkeeping, tax, audit, or similar professional business of any existing client of [MWR] or any client of [MWR] hereafter obtained by any member of [MWR] or any employee of [MWR] obtained through the date of termination and this restriction shall continue for two (2) years following the date of the termination of employment.

An exception to the covenant not to compete provision provided that the provision would not be binding in a situation where Thurman associated with another accounting firm as to clients of MWR with which Thurman had no professional contact during his employment or for which he performed no services.

The covenant not to compete provision also included an "Option to Serve Clients" provision, which provided:

> If a client elects to have [Thurman] perform services for said client after the date of termination of employment, then [Thurman] may continue to choose to serve such client or clients of [MWR] in accordance with the following provisions:
>
> 1. As to clients which leave [MWR] within the two (2) year period immediately following the termination of employment and commence a relationship with [Thurman], [Thurman] shall pay to [MWR] a sum equal to thirty percent (30%) of the total collected billings for services rendered by [Thurman] during each of the next succeeding five-years or in the case of employee clients, the lesser of five years or length of time client was at this firm, said five-year period commencing with the date of establishment of a client relationship between [Thurman] and the client.

On October 15, 1998, Thurman voluntarily resigned from his position at MWR due to the apparent lack of partnership opportunities. In November 1998, MWR notified its clients by letter that Thurman no longer was associated with the firm and was engaged in accounting elsewhere and invited the clients to continue using the services of MWR. After resigning, Thurman worked in St. Louis for a couple of months. In January 1999, Thurman opened his own accounting firm in Farmington, Missouri. Since then, Thurman has served former clients of MWR, clients to whom he was first introduced at MWR, and clients who were part of the sale of his business to MWR. In early 1999, Thurman informed MWR that he did not think the covenant not to compete provision under the Employment Agreement was fair and

that he was not going to make the payments required under the provision.

On September 17, 1999, Appellants filed a two-count petition against Thurman to enforce the terms of the Employment Agreement. Count I of the petition sought an injunction to restrain Thurman from violating the covenant not to compete provision of the Employment Agreement. Count II of the petition sought an accounting to enforce the payment terms under the "Option to Serve Clients" provision of the Employment Agreement. Subsequently, Thurman filed a motion to dismiss the petition arguing that the petition failed to state a cause of action upon which relief could be granted and that Appellants did not file any purported contract and did not make any specific allegations to support a contract. The trial court overruled the motion to dismiss.

During discovery, MWR served interrogatories and a request for production of documents to Thurman requesting billing information about former MWR clients served by Thurman. Thurman objected to the discovery and, in November 2003, filed a motion for protective order to prevent the disclosure of any financial information as to certain clients. Specifically, Thurman objected to providing financial information regarding clients served by seven former MWR employees because, even if the Employment Agreement was enforceable as to Thurman, MWR had not enforced the same or similar employment agreements with those employees, and thus, MWR had not taken the necessary action to protect its interest in those clients. Thurman did provide financial information for former MWR clients that he had served since terminating his employment with MWR but that had not been served by the seven former MWR employees. Subsequently, Appellants filed a motion to compel in which Appellants stated

that Thurman was asking the court to rule that the Employment Agreement was unenforceable as to clients served by the seven former MWR employees, i.e., a "selective enforcement" defense.

In June 2004, the trial court held an evidentiary hearing on Thurman's motion for protective order and Appellants' motion to compel. The following witnesses testified at the hearing: Robbins, Thurman, Ginger Taylor (Taylor), a partner with MWR, and two of the seven former MWR employees. Evidence was presented regarding the employment agreements with the seven former MWR employees and the enforcement of those agreements. Also admitted into evidence was Defendant's Exhibit 1, a list of former MWR clients that Thurman had served since terminating his employment with MWR and that the seven former MWR employees also had served. During the hearing, Thurman orally renewed his motion to dismiss. At the end of the hearing, the court gave the parties additional time to file briefs stating their position, though the docket sheet indicates that neither party did so, and took the motions under advisement.

On September 21, 2004, the trial court entered a judgment (discovery judgment) granting the motion for protective order and denying the motion to compel. The court also overruled Thurman's oral motion to dismiss on procedural grounds, but the court stated that by doing so, it did not indicate its position in the event Thurman filed a motion for summary judgment. In the discovery judgment, the trial court found: the evidence failed to establish that any contacts Thurman had with any clients listed on Defendant's Exhibit 1 was of such quality, frequency, and duration as to enable Thurman to influence the clients; the fact that Thurman had some form of contact with the clients while employed with

MWR was not enough to establish, as a matter of law, MWR's protectable interest in client contacts; MWR was not entitled to a presumption that any particular client came to Thurman to utilize his services because of Thurman's prior employment with MWR; and MWR did not prove substantial customer contacts. The trial court further found that the Employment Agreement:

> was not an arms-length transaction; was an involuntary agreement; is vague; overbroad, overreaching, lacks consideration, has not been uniformly applied, has not been uniformly required to be signed by employees for continued employment, and some of the provisions of the Employment Agreement are unconscionable.

The court also found some of the language of the Employment Agreement to be an unreasonable restraint on trade in that the language failed to articulate a reason for distinguishing between MWR's employees who leave and join another accounting firm as opposed to employees who leave and set up their own accounting business. Additionally, the court found the Employment Agreement was not a prerequisite for continued employment with MWR, and there were employees who failed and refused to sign their employment agreements, yet who continued to maintain their employment with MWR. The court further found the testimony of Robbins and Taylor to be partly in conflict with each other and to be not credible and the testimony of Thurman to be credible. Accordingly, the court concluded that Appellants were not entitled to disclosure by Thurman of any financial information as it applied to clients listed on Defendant's Exhibit 1.

Appellants appealed the discovery judgment, and we dismissed the appeal for lack of a final judgment. *Maloney v. Thur-man,* 157 S.W.3d 337, 340 (Mo.App. E.D. 2005).

In September 2004, Thurman filed a statement of uncontroverted material facts, and, in October 2004, Thurman filed a motion for summary judgment, arguing that he was entitled to judgment as a matter of law based on the discovery judgment. Specifically, Thurman stated that whether or not the Employment Agreement was vague, overbroad, not voluntary, and a prerequisite for continued employment and whether or not some of the provisions of the Employment Agreement were unconscionable were all tried during the June 2004 evidentiary hearing. Appellants filed a response to the motion for summary judgment, including an affidavit of Robbins and exhibits, as well as a response to Thurman's statement of uncontroverted material facts and a statement of additional material facts. Thurman filed a response to Appellants' statement of additional material facts.

On November 10, 2005, the trial court entered an order granting Thurman's motion for summary judgment and concluding that Thurman was entitled to judgment as a matter of law. Appellants appeal from the summary judgment as well as the discovery judgment.

## Discussion

Because the summary judgment was based upon findings and conclusions made by the trial court in the discovery judgment, the validity of the summary judgment rests upon the validity of the findings and conclusions in the discovery judgment.

The discovery judgment states that on June 17, 2004, the "parties announced ready for an evidentiary hearing" on MWR's motion to compel and Thurman's motion for protective order. The record establishes the purpose of the evidentiary hearing. The docket entry regarding the

setting of the evidentiary hearing states: "[c]ause set on Plaintiff[s'] Motion to Compel and Defendant's Motion for Protective Order." At the start of the evidentiary hearing, the trial court stated the following: "[t]his matter comes on today on Plaintiff[s'] Motion to Compel and Defendant's Motion for Protective Order;" "[a]s previously stated, the matter comes on, on a Motion to Compel and Defendant's Motion for Protective Order;" and "for simplicity sake, the Court is going to proceed on the Motion for Protective Order, and then if there's any additional evidence that needs to be obtained from the Petitioner, then they may go ahead and do so." At the evidentiary hearing, Thurman testified more than once that he was asking the trial court to enter a protective order so that he did not have to disclose financial information for the clients listed on Defendant's Exhibit 1. At the end of the evidentiary hearing, the trial court stated that it would take the motions under advisement. The docket entry subsequent to the evidentiary hearing states: "On the 17th of June, 2004, ... Parties announced ready for an evidentiary hearing on Plaintiffs' Motion to [C]ompel Discovery from Defendant."

Based on this record, we conclude that the June 2004 evidentiary hearing was not a trial on the merits. Although evidence may have been presented without objection at the evidentiary hearing that related to the issues ruled on by the trial court in the discovery judgment, such issues were nonetheless outside the scope of the motions scheduled for hearing. Thurman argues, citing Rule 55.33, the issues identified in his motion for summary judgment were tried by implied consent of the parties at the evidentiary hearing, and therefore, the motions should be amended to include those issues as having been raised in the motions. We are unpersuaded by this argument, as we find Rule 55.33 inapplicable under these circumstances. First,

as stated already, the evidentiary hearing was not a trial on the merits. A trial and an evidentiary hearing are treated as distinct entities under the rules of civil procedure. *See, e.g.,* Rule 55.29 ("no trial *or* evidentiary hearing ... shall be conducted outside the county where the case is pending....") (Emphasis added). Second, Rule 55.33 applies to the amendment of pleadings, not discovery motions. Rule 55.33(b) ("When issues not raised by the *pleadings* are *tried* by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the *pleadings.* Such amendment of the *pleadings* as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the *trial* of these issues.") (Emphasis added). Pleadings and motions also are treated as distinct entities under the rules of civil procedure. *See, e.g.,* Rule 55.03(a) ("Every *pleading, motion,* and other filing shall be signed by at least one attorney of record....") (Emphasis added).

A written motion shall state with particularity the grounds for the motion. Rule 55.26(a). We determine that the trial court erred in making findings and conclusions in the discovery judgment addressing the merits of the case and going beyond the scope of the issues raised in Thurman's motion for protective order and Appellants' motion to compel, which were the subject of the June 2004 evidentiary hearing. To conclude otherwise would risk violating MWR's rights to due process by the lack of notice and an opportunity to be heard on the issues decided by the trial court, especially since the trial court made determinations on the merits that were adverse to Appellants' interests.

To the extent that the trial court made findings and conclusions in the discovery

judgment that addressed the issues raised in the motion for protective order and the motion to compel, we determine that the court erred in those findings and conclusions. We find no support, and Thurman provides no support, for the proposition that because MWR may have selectively enforced similar employment agreements with other employees, it relinquished its right to attempt to enforce the Employment Agreement against Thurman as to those clients served by the other employees in that MWR did not take the necessary action to protect its interest in those clients.

Although the trial court's rulings on the merits in the discovery judgment may prove to be correct, the court nonetheless ruled prematurely on the merits in the discovery judgment. We note that our conclusion does not indicate our position on the merits of the case. Accordingly, we reverse the discovery judgment. Because Thurman's motion for summary judgment relied on the improper rulings in the discovery judgment, and the trial court entered summary judgment based upon the discovery judgment, we reverse the summary judgment as well. Because of the prior rulings in this case, we remand for further proceedings with instructions for the case to be assigned to a different judge.

### Conclusion

The discovery judgment and the summary judgment entered by the trial court are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

GARY M. GAERTNER, SR., P.J., and LAWRENCE E. MOONEY, J.: Concur.